■ PASQUALE MERCURIO, Individually and as Father and Natural Guardian of STEVEN H. MERCURIO, et al., Appellants, v DUNLOP, LTD., et al., Defendants and Third-Party Plaintiffs-Respondents, and COUSIN'S FOREIGN TIRE CORP., Respondent. RALLYE MOTORS, INC., Third-Party Defendant-Respondent.—In a negligence and products liability action to recover damages for personal injuries, etc., plaintiffs appeal from (1) a judgment of the Supreme Court, Nassau County, entered June 22, 1978, which, *inter alia,* is in favor of defendants and against them, on a jury verdict, and (2) an order of the same court, dated November 9, 1978, which denied their motion to set aside the jury's verdict. Judgment reversed, on the law, and new trial granted as to all parties and causes, with costs to abide the event. Appeal from the order dismissed as academic. The injured plaintiff, then an 18-year-old apprentice mechanic, lost the sight of his right eye when a tire he was attempting to mount on a rim exploded. As a result, he sued the tire manufacturer, its United States subsidiary and the wholesaler who supplied the tire to his employer. At the conclusion of the trial, the jury rendered a verdict in favor of the defendants. We are constrained to reverse and remand for a new trial. The record quite palpably reveals that the behavior of defense counsel during the trial created an atmosphere which deprived plaintiffs of a fair trial. What was involved was not an isolated remark during questioning or summation, but a seemingly continual and deliberate effort to divert the jurors' and the court's attention from the issues to be determined. During direct examination of the injured plaintiff, defense counsel stated, "I object to this kind of argument in front of the jury. It seems that he [plaintiffs' attorney] doesn't know how to try a case." Two pages later in the record, and still on direct examination of the injured plaintiff, defense counsel stated concerning said plaintiff, "He is an interested witness * * * He is asking for a large sum of money." On the next page, the following dialogue appears: "THE COURT: Any other questions? [PLAINTIFFS' COUNSEL]: I have another one. I am trying to frame it without being intimidated. [DEFENDANTS' COUNSEL]: I want the jury removed. I am going to make a motion, sir. Those kinds of remarks are intended to steal money from the defendant sir." The defendants' attorney continued at some length outside the presence of the jury. In addition, defense counsel made two baseless motions for a mistrial. All of this occurred during the direct examination of the first witness. Had it terminated after the court's extensive admonitions to both attorneys during the last mentioned fracas, it might have been excusable, but it was followed by other outbursts during

the *testimony* of plaintiffs' expert. Thus: "[DEFENDANTS' COUNSEL]: If your Honor please, that's a French manufacturer. [PLAINTIFFS' COUNSEL]: So what? [DEFENDANTS' COUNSEL]: Of course, counsel breaks out in his usual 'so what.' So what? The answer to that is it's a French manufacturer, it has nothing to do with this case, and I move to strike, and I ask your Honor to direct this man to desist in these statements that are *going on time and time and time again*, and I'm getting a little tired of it. I ask the Court to keep a little order in this particular courtroom. THE COURT: That goes for both attorneys. [DEFENDANTS' COUNSEL]: Well, that is an improper statement, sir. He's getting away with these things, he just said something. Is he being censured for that, sir? Should he have said it? Do you approve of it? [PLAINTIFFS' COUNSEL]: I apologize. I didn't think it could be heard. I apologize. [DEFENDANTS' COUNSEL]: Now sir, he's going to make statements that he doesn't think it could be heard. I ask that he be censured for that. THE COURT: That's up to me, [defendants' counsel]. [DEFENDANTS' COUNSEL]: It certainly is. That's why I'm asking you, because you have the power. THE COURT: I have the power, whether I'm going to do it is up to me, also. I'm suggesting that both attorneys let the witness complete his answer, and let's move on. [DEFENDANTS' COUNSEL]: If your Honor please, have I prevented the witness from completing his answer, sir? THE COURT: No, but you are— [DEFENDANTS' COUNSEL]: Then don't say that to me in front of the jury. That's unfair, sir." An extensive colloquy followed in which the court severely admonished both attorneys and advised them that the next outburst would result in a citation for contempt. Another serious confrontation occurred during cross-examination of defendants' medical expert: "[DEFENDANTS' COUNSEL]: Just a moment. I want the jury excused on that one, sir. [PLAINTIFFS' COUNSEL]: Incorrectly is what I mean. [DEFENDANTS' COUNSEL]: He said falsely. That's an accusation. I charge this man, again, with attempting to defeat the defendants by improper tactics. I want to make a motion. May the jury be excused. I heard him say 'falsely,' and that's the word, sir. I resent it both on behalf of the doctor and myself. [PLAINTIFFS' COUNSEL]: Your Honor, I meant incorrectly. [DEFENDANTS' COUNSEL]: I call him a liar. THE COURT: Gentlemen, please." The jury was removed, the court indicated the impropriety of this behavior by counsel, held both of them in contempt, and fined each $250. It should be noted that we have here cited only the major confrontations, but the trial was all too frequently interrupted by argumentative objections which persisted after adverse rulings. In addition, we conclude that the trial court should have held a hearing on plaintiffs' posttrial motion to set aside the verdict, *inter alia,* because of improper behavior by a court officer. Plaintiffs alleged that the court officer in charge of the jury had remarked within the hearing of the jury that plaintiffs' expert was a "fraud and a phony." This allegation was supported by the affidavit of a disinterested witness to whom the remark was made within the earshot of the jury. In addition, plaintiffs' attorney stated he had spoken to the jurors after trial and they expressed this opinion in identical language. That these jurors may have been susceptible to the influence of the court officer because of a close relationship which developed between them was indicated by the undisputed testimony that the jurors had purchased the officer a cake and a birthday card during the trial. The court denied the posttrial motion without a hearing, noting that it had conducted its own inquiry and concluding that it was "hard to believe" that the alleged statement of the court officer influenced the jury. We believe the circumstances warranted a hearing since it does not have to be proven that a court officer's remarks actually influenced the jury so long as the natural

tendency is to influence (see *Payne v Burke,* 236 App Div 527). In view of this egregious incident and the unfortunate atmosphere in which the trial was conducted, justice will be served by a new trial. Lazer J. P., Gibbons, Gulotta and Margett, JJ., concur.